UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CASCADIA WILDLANDS; WILLAMETTE RIVERKEEPER; OREGON WILD and NATIVE FISH SOCIETY,<br><br>    Plaintiffs,<br><br>v.<br><br>EUGENE WATER & ELECTRIC BOARD,<br><br>    Defendant. | Case No. 6:25-cv-00446-MTK<br><br>**AMENDED OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

Cascadia Wildlands, Willamette Riverkeeper, Oregon Wild, and Native Fish Society (collectively, "Plaintiffs") filed this action pursuant to Section 9 of the Endangered Species Act. 16 U.S.C. § 1538. Before the Court are (1) Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF No. 25) and (2) Plaintiffs' Motion for Preliminary Injunction (ECF No. 12). For the following reasons, Defendant's motion is granted, and Plaintiffs' motion is denied as moot.

## BACKGROUND

This case pertains to the impacts of Defendant's operation of the Carmen-Smith Hydroelectric Project ("the Project") on threatened Upper Willamette River Chinook salmon and bull trout. Compl. ¶ 1. The Court begins by summarizing the relevant statutory and regulatory framework and the facts underlying this action and the instant motions.

I.  **Statutory and Regulatory Framework**

   A.  **Endangered Species Act**

Congress enacted the Endangered Species Act ("ESA") in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). When enacted, the ESA "represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). The ESA charged the National Marine Fisheries Service and the Fish and Wildlife Service ("the Services")[1] with administering the ESA. Under Section 4 of the ESA, the Services are directed to list endangered and threatened species, and to designate critical habitat for those species. 16 U.S.C. § 1533.

Under Section 7 of the ESA, federal agencies ("action agencies") are required to "insure that any action authorized, funded, or carried out by such agency. . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical habitat]." 16 U.S.C. § 1536(a)(2). The action agency must consult with the relevant Service in making such a determination. If either the action agency or the relevant Service "determines that the proposed action is 'likely to adversely affect' a listed species or habitat, formal consultation is required." *Conservation Cong. v. Finley*, 774 F.3d 611, 615 (9th Cir. 2014) (quoting 50 C.F.R. § 402.14). In formal consultation, the relevant Service prepares a Biological Opinion which includes, among other things, "[t]he Service's opinion on whether the action is . . . [l]ikely to jeopardize the continued existence of a

---

[1] The National Marine Fisheries Service generally has jurisdiction over marine and anadromous species such as Chinook salmon, while the Fish and Wildlife Service has jurisdiction over terrestrial and freshwater species such as bull trout. *See Nat. Res. Def. Council v. Haaland*, 102 F.4th 1045, 1054 n. 1 (9th Cir. 2024).

listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. § 402.14(h)(1)(iv). If the Service concludes that "the taking of an endangered species or a threatened species incidental to the agency action" will not jeopardize the listed species, it will provide an "Incidental Take Statement" that sets forth the terms and conditions of such allowable take. 16 U.S.C. § 1536(b)(5); 50 C.F.R. § 402.14(i)). The action agency must reinitiate consultation immediately if it exceeds the permissible amount of incidental take. 50 C.F.R. § 402.14(i)(4), 402.16(a)(1).

Section 9 prohibits the "take" of listed species, which means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1538(a)(1), 1532(19). An Incidental Take Statement operates as a safe harbor from otherwise impermissible take, but the action agency or applicant is no longer insulated from Section 9 liability "where an action agency does not reinitiate consultation with the [Service] despite the failure of promised conservation measures." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1115 (9th Cir. 2012). The ESA includes a citizen-suit provision empowering citizens to sue any person who violates the ESA and its implementing regulations. 16 U.S.C. § 1540(g). District courts have jurisdiction over such actions. *Id.*

**B.    Federal Power Act**

Under the Federal Power Act ("FPA"), the Federal Energy Regulatory Commission ("FERC") is charged with licensing the construction, operation and maintenance of "dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power" on bodies of water subject to federal jurisdiction. 16 U.S.C. § 797(e). Such licenses are subject to conditions, including those "for the adequate protection, mitigation, and enhancement of fish and wildlife." 16 U.S.C. § 803(a); *see also* 16

U.S.C. § 803(j) ("each license issued under this subchapter shall include conditions for such protection, mitigation, and enhancement [of fish and wildlife]"). Because FERC's issuance of a license is a federal action, consultation with the Services pursuant to Section 7 of the ESA is required. FERC typically incorporates conditions of any Incidental Take Statement issued by the Services into the mandatory terms of the license. *KEI (Maine) Power Mgmt. (III) LLC*, 173 FERC ¶ 61,069 (2020). Parties "aggrieved by an order" issued by FERC may seek review of the order by the United States Court of Appeals. 16 U.S.C. § 825*l*(b) ("Section 313(b)").

**II.    Factual Background**

Defendant EWEB owns and operates the Carmen-Smith Hydroelectric Project ("the Project") on the Mckenzie River. Compl. ¶ 37. The Project consists of three dams, three reservoirs, and two powerhouses. *Id*. It is licensed by FERC. *Id*. One of the Project dams—the Trail Bridge Dam—operates as an absolute barrier to upstream fish passage for Upper Willamette River ("UWR") Chinook salmon and bull trout, which are listed species under the ESA. *Id*. ¶¶ 27, 35, 40. Trail Bridge Dam prevents these species from accessing upstream critical habitat and prevents up- and downstream populations of bull trout from interbreeding. *Id*. ¶¶ 42-43. For bull trout located above the dam and for UWR Chinook salmon transported above the dam, downstream passage through the Trail Bridge Dam and reservoir can result in injury or mortality. *Id*. ¶¶ 47-50. Plaintiffs also allege that current efforts to "trap-and-haul" these fish upriver to allow access to upstream habitat likewise results in their injury, mortality, harm, and harassment. *Id.* ¶ 44. In sum, Plaintiffs allege that the existence and operation of the Trail Bridge Dam results in harm, injury, or mortality to UWR Chinook salmon and bull trout in various ways. *Id.* ¶¶ 40-51.

Defendant has held a license from FERC to operate the Project since 1958. *Id.* ¶ 37. In November 2006, it filed an application to renew its license. *Id.* ¶ 52. Following the involvement

of numerous parties in the relicensing process and FERC's preparation of an environmental assessment, the Services issued Biological Opinions in 2010 and 2011 that concluded that the proposed relicensing would not jeopardize the continued existence of UWR Chinook salmon or bull trout, or adversely modify their habitat. *Id.* ¶¶ 52-56. The Services' findings were premised on Defendant's implementation of certain conservation measures, including volitional fish passage (e.g., fish ladders). *Id.* ¶¶ 56-59. The Services issued Incidental Take Statements for the Project, conditional on Defendant's implementation of the conservation measures within six years. *Id.* ¶ 60.

On January 29, 2016, Defendant completed an economic viability analysis that found the volitional fish passage requirements were not economical and requested time to amend the license to propose more economical conservation measures for fish passage. *Id.* ¶ 61. Defendant proposed different measures subject to new deadlines as well as interim "trap-and-haul" measures. *Id.* ¶¶ 61-62. Unlike originally contemplated, those measures did not include volitional fish passage at Trail Bridge Dam but instead provided for a permanent trap-and-haul system and spillway modifications. *Id.* ¶ 61. Ultimately, in 2018, the Services issued revised Biological Opinions that again made "no jeopardy" findings based on the revised conservation measures. *Id.* ¶¶ 64-68. The Services issued Incidental Take Statements which were expressly conditional on timely implementation of those measures. *Id.* ¶¶ 69-71. FERC issued the license on May 17, 2019. *Id.* ¶ 72. The license incorporated the permanent trap-and-haul and spillway modification measures at Trail Bridge Dam, to be completed by May 2022. *Id.* ¶ 72-74.

On May 16, 2022, Defendant notified FERC of its noncompliance with the fish passage measures and requested new completion dates in 2027 and 2029. *Id.* ¶ 75. In late 2023 and early 2024, the Services notified FERC of Defendant's noncompliance and explained that Defendant

would no longer be able to rely on the 2018 Biological Opinions without reinitiating ESA Section 7 consultation. *Id.* ¶¶ 76-78. The Services informed FERC that the duty to reinitiate ESA consultation had been triggered. Jensen Decl. Exs. 16, 22, ECF No. 13. As of the date of Plaintiff's Complaint, Defendant had not yet begun constructing the fish passage measures contemplated in the Services' Biological Opinions and required in the Incidental Take Statement and FERC license. Compl. ¶ 81.

Plaintiffs filed this lawsuit pursuant to the ESA's citizen suit provision, arguing that because the Incidental Take Statement no longer insulates Defendant from ESA Section 9 violations, Defendant is liable for its "take" of listed UWR Chinook salmon and bull trout related to the operation of the Trail Bridge Dam. *Id.* ¶¶ 82-92. Plaintiffs seek a variety of remedies, including a declaration that Defendant is in violation of Section 9 of the ESA, provision of volitional fish passage or decommissioning of the Trail Bridge Dam, and interim measures to reduce take pending the implementation of volitional fish passage or decommissioning.

**STANDARD**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Advanced Integrative Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249, 1256 (2022). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ.

P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Edison v. U.S.*, 822 F.3d 510, 517 (9th Cir. 2016). A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013). A factual attack on the plaintiff's assertion of jurisdiction "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig*, LLC, 840 F.3d 606, 614. *See also Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, arguing that Section 313(b) of the FPA confers jurisdiction exclusively with the Court of Appeals. Defendant argues that Plaintiffs' Complaint, though styled as an ESA Section 9 claim, is in fact an attack on the FERC license. In opposition to Defendant's motion, Plaintiffs contend (I) that pursuant to the ESA, their Section 9 take claim can *only* be brought before the district court and (II) that their Section 9 take claim does not attack, directly or collaterally, a FERC order.

I.      **Jurisdictional Provisions**

The parties first dispute which statute's jurisdictional provision governs this dispute, with Defendant relying on the FPA, and Plaintiffs relying on the ESA. Section 313(b) of the FPA provides that "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located" and that the Courts of Appeals' jurisdiction "shall be exclusive." 16 U.S.C. § 825*l*(b). The ESA provides that "[t]he district courts shall have jurisdiction . . . to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be." 16 U.S.C. § 1540(g)(1).

To the extent that these provisions are in tension with one another, the FPA's jurisdictional provision prevails because it provides for exclusive jurisdiction while the ESA's jurisdictional grant is general. The plain language of the ESA provides only that the district court "shall" have jurisdiction, while FPA states that the Court of Appeal's jurisdiction is "exclusive." The Supreme Court's interpretation of Section 313(b) is clear: "all objections to [FERC's] order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958); *see also California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) ("By its express language, the [FPA] provides *exclusive* jurisdiction for the Courts of Appeals to review and make substantive modifications to FERC licensing orders.") (emphasis in original). In contrast, there is nothing in the plain language of the ESA to suggest that jurisdiction is exclusive, and it must therefore give way to the more specific language of the FPA. *See California Save Our Streams*, 887 F.2d at 911

("when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation").

Thus, to the extent Section 313(b) applies, jurisdiction lies exclusively with the Courts of Appeals. The remaining question is therefore whether Section 313(b) is in fact triggered by Plaintiff's Complaint. For the reasons addressed in the following section, the Court finds that it is.

## II.     The Nature of Plaintiffs' Claim

Plaintiffs next argue that the FPA does not bar their ESA claim because their Complaint does not challenge a FERC order such that it would trigger Section 313(b). Rather, Plaintiffs contend that this action is based on ESA Section 9, which has independent significance outside the FERC licensing process. Defendant contends that Plaintiffs' claim is a collateral attack on the license because it requires the Court to determine whether Defendant violated the terms and conditions of the Incidental Take Statement —which is incorporated into the license—and therefore "necessarily require[s] review and analysis of the license, which this Court lacks jurisdiction to do." Def. Reply 5.

A plaintiff may not avoid the FPA's "strict jurisdictional limits" through "careful pleading." *California Save Our Streams*, 887 F.2d at 911. When a plaintiff argues that the substance of their claims are premised on violations of other laws, courts are to look to "the essence of plaintiffs' claims in deciding whether they challenge[] the FERC license" and therefore subject to Section 313(b)'s exclusive jurisdiction provision. *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1188 (9th Cir. 2022). If "the practical effect of the action in district court is an assault on an important ingredient of the FERC license," jurisdiction rests with the Courts of Appeals under Section 313(b). *California Save Our Streams*, 887 F.2d at 912.

Page 9 — AMENDED OPINION AND ORDER

*Sauk-Suiattle* illustrates the contours of what constitutes a collateral attack on a FERC license. That case pertained to the defendant City of Seattle's operation of a dam as part of a hydroelectric project. 56 F.4th at 1182-83. Following relicensing proceedings, FERC ultimately issued an order granting the project a new license in 1995. *Id.* at 1183. The license included provisions to protect fish species, but did not include fish passage. *Id.* In 2021, the Sauk-Suiattle Indian Tribe sued the City of Seattle asserting that the defendant's failure to include fish passage violated several state and federal laws. *Id.* The district court dismissed the case for lack of subject matter jurisdiction based on Section 313(b), finding that "the complaint was a collateral attack on the FERC Order because it challenged an issue decided by FERC: whether Seattle was required to construct Gorge Dam fishways. *Id.* at 1184. The Ninth Circuit affirmed, explaining that although the plaintiff did not "expressly" challenge FERC's order, the practical effect of it was to challenge a condition (lack of fish passage) that FERC had already considered and decided not to include. *Id.* at 1187-88. Thus, the Ninth Circuit concluded that Section 313(b) vested jurisdiction with the Courts of Appeals.

Although this case arises under a different law than those at issue in *Sauk-Suiattle*, the Court finds that case controlling here. That case, like this one, involved claims based on violation of laws that have independent significance outside of a FERC license. There, the plaintiff alleged that the defendant violated the law by operating a dam that blocked fish passage, while here Plaintiffs allege that Defendant violated the law by operating a dam that results in the taking of listed species. Both cases involved a request for volitional fish passage. The same reasoning applied by the Ninth Circuit there applies here as well, because both cases involve a condition—

Page 10 — AMENDED OPINION AND ORDER

volitional fish passage[2]—already considered and rejected by FERC. The fact that an independently significant law may have been violated did not affect the applicability of Section 313(b) in *Sauk-Suiattle*, and the Court does not see any material differences between that case and this one that would allow a different result here.

Plaintiffs argue that this interpretation of Section 313(b) essentially exempts FERC-licensed hydropower operators from ESA Section 9 liability and provides no recourse for unlawful take. As an initial matter, that practical argument alone does not obviate the Court's obligation to interpret and apply Section 313(b)'s exclusive jurisdiction provision and the Ninth Circuit's holding in *Sauk-Suiattle*. However, as Defendant points out, the FERC administrative process does provide a means to address Plaintiffs' concerns about the effects of the Project on listed species. The Incidental Take Statement's terms and conditions—including the fish passage provisions that Defendant has failed to timely implement—are included in the license, and FERC has an affirmative duty to "monitor and investigate compliance with each license." FERC also has the power to enforce the terms of the license. 16 U.S.C. § 823b(a) ("After notice and opportunity for public hearing . . .[FERC] may issue such orders as necessary to require compliance with the terms and conditions of licenses"). In addition, FERC is obligated to reinitiate ESA Section 7 consultation where "the amount or extent of taking specified in the incidental take statement is exceeded." 50 C.F.R. § 402.16. To the extent that Plaintiffs believe

---

[2] The fact that Plaintiffs also seek declaratory and interim relief does not change this Court's conclusion. Reading Plaintiffs' Complaint in context, including the take allegations and the prayer for relief, the dispute centers around take caused by the Trail Bridge Dam's alleged lack of adequate fish passage. *See, e.g.*, Compl. ¶¶ 81-92 (allegations entitled "Ongoing Harm, Injury, and Mortality from EWEB's Failure to Implement Effective Fish Passage at Trail Bridge Dam"); Compl. p. 33 (listing requested relief, including volitional fish passage or decommissioning as well as interim measures until volitional fish passage is complete). As in *Sauk-Suiattle*, the issue of fish passage at Trail Bridge Dam was considered and addressed by FERC in its licensing order.

that FERC is not carrying out those obligations, the FPA provides the procedure by which Plaintiffs may challenge FERC's action or inaction and ultimately take their claims up with the Ninth Circuit. While that challenge may not take the shape of a traditional Section 9 take claim in district court, that does not change the plain language of Section 313(b) and this Court's ability to take up a challenge that collaterally attacks the FERC license.

Moreover, despite Plaintiffs' focus on the independent significance of Defendant's noncompliance with the Incidental Take Statement under the ESA, the Court cannot ignore how intertwined the Incidental Take Statement is with the FERC licensing process and the ESA Section 7 consultation related to it. That is particularly true here, where there are ongoing efforts between Defendant, FERC, and the Services to address Defendant's lack of compliance with the license's fish passage requirements—including the conditions of the Incidental Take Statement. The Services explicitly notified FERC in December 2023 and January 2024 that the duty to reinitiate Section 7 consultation had been triggered by Defendant's lack of compliance. Jensen Decl. Exs. 16, 22. Defendant notified FERC on March 7, 2025, that it "anticipates filing a request with the Commission to approve certain changes to license requirement that it expects to result from its ongoing engagement with the Services." Hernandez Decl. Ex. K, ECF No. 26. On April 9, 2025, FERC formally designated Defendant as its "non-federal representative for the purpose of conducting informal consultation with [the Services]." *Id.* Ex. L. That letter noted that Defendant was engaged in "active discussions with the Services regarding fish passage measures" and that "the proposed action may include adjustments to the existing license requirements." *Id.*

The posture of this case illustrates the purpose of the FPA's exclusive jurisdiction requirement which is to "avoid the redundancy of compiling separate records before the agency

and the trial court." *California Save Our Streams*, 887 F.2d at 911. While ESA Section 9 take may be the trigger for Plaintiff's action here, it is impossible to ignore the extent to which this Court would be required to wade into the issue of adequate fish passage in addressing any remedy, which is the exact issue being considered in ongoing conversations between the Services, FERC, and Defendant. In light of the plain language of Section 313(b) of the FPA and the nature of Plaintiffs' Complaint, the Court cannot frustrate the purpose of the FPA by creating a parallel proceeding that addresses the same fish passage issues being discussed by Defendant, FERC, and the Services related to Defendant's license.

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF No. 25) is GRANTED and this case is DISMISSED without prejudice. Plaintiffs' Motion for Preliminary Injunction (ECF No. 12) is DENIED as moot.

DATED this <u>2nd</u> day of September 2025.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge